Commonwealth ex rel. Harbold, Appellant, *v.* Myers.

Submitted November 13, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James W. Harbold,* appellant, in propria persona.

*Lewis H. Markowitz, Earl R. Doll, Nevin J. Trout* and *Elmer M. Morris,* Assistant District Attorneys, *John T. Miller,* First Assistant District Attorney, and

*Daniel W. Shoemaker,* District Attorney, for appellee.

Opinion by Mr. Justice Roberts, March 16, 1965:

Appellant petitioned for a writ of habeas corpus which would release him from imprisonment. Appellant-petitioner is serving a life sentence imposed in 1962 after a jury returned a verdict of murder in the first degree. At the jury trial, two court-appointed counsel conducted petitioner's defense.

Following the verdict, counsel for petitioner filed motions for a new trial and in arrest of judgment.[1] Before the trial court passed on these motions, however, the petitioner himself wrote to the trial judge requesting that the post-trial motions be withdrawn and that sentence be imposed.[2] Informed of this development, petitioner's counsel consulted with him and discussed the consequences of withdrawing the motions. Shortly thereafter petitioner was brought before the court and sentenced.[3]

In June of 1964, petitioner filed his petition for a writ of habeas corpus. The petition alleged, in reality, six grounds in support of the requested relief.[4] Three of these grounds were identical with those explicitly raised in the 1962 post-trial motions.[5] Two assign-

---

[1] These motions were filed on May 28, 1962, four days after the verdict of guilty.

[2] The letter was dated June 11, 1962.

[3] Sentence was imposed on June 15, 1962.

[4] A seventh challenge is really a reiteration of two other allegations.

[5] In summary form, these allegations are: (1) that, because a writ of habeas corpus had been granted by a court en banc, petitioner's trial constituted double jeopardy, even though the writ was granted before a jury had been impaneled; (2) that an alternate juror had a preconceived opinion of the defendant's guilt and misrepresented on voir dire that he had no fixed opinion; and (3) that the district attorney illegally sequestered a witness.

ments related to matters objected to during trial and, although not specifically set out, apparently were incorporated into the post-trial motions.[6] The sixth allegation in the habeas corpus petition concerned a matter not previously raised.[7] A three judge court en banc carefully scrutinized the petition for a writ of habeas corpus. In an extensive opinion, after discussing each of the petition's allegations, the court unanimously denied the petition. Because the court deemed the petition to be clearly without merit, no hearing was held. We agree that the petition should be denied.

Although we agree with the conclusions of the court below, we believe there is a further ground on which

All of these objections, specifically raised at the trial, were discussed on the record and were overruled by the court. Counsel for defendant were quite diligent in raising and arguing these, as well as other, objections.

[6] These objections were directed to (1) the court's refusal, because of information originally received from defense counsel, to order the petitioner released from his handcuffing to a sheriff during the first day of trial (during voir dire examination) and (2) the district attorney's alteration of a witness card which changed the designation of a witness from "Commonwealth" to "defense". As were the objections set forth in note 5, supra, these objections were urged at trial and overruled after side-bar conferences.

In the post-trial motions, counsel for defendant reserved the right to file additional objections when the notes of testimony were transcribed and the court allowed 30 days from the receipt of transcript for defense counsel to do so. The motions were withdrawn before the 30 day period expired.

[7] This last ground consisted of an allegation that the court had intentionally suppressed relevant and material evidence. This contention was based on the fact that, prior to trial, defense counsel had made a request for the appointment of a sanity commission, a request which was granted. The commission found that the defendant was not mentally ill. Defense counsel did not, of course, introduce this report at trial. Petitioner now contends that this report was accordingly thus suppressed by the court. The contention is so devoid of merit as to be termed frivolous and, naturally, was not raised by counsel in their post-trial motions.

the denial should be predicated. Upon review of this record, we conclude that petitioner waived his right to collaterally attack the validity of his conviction in the state court by deliberately by-passing the orderly procedures devised for direct post-trial review in this Commonwealth.[8]

As we have noted, post-trial motions were filed on behalf of petitioner, but these were withdrawn on petitioner's initiative and express request.[9] When petitioner was brought before the court for sentencing on June 15, 1962, his counsel reviewed, in his presence and on the record of that hearing, the background of the defendant's request for the withdrawal.[10] Petition-

---

[8] A determination by a federal court that such by-passing occurred may lead a federal court to abstain from granting federal habeas corpus on a petition alleging denial of federal rights. See *Fay v. Noia*, 372 U.S. 391, 83 S. Ct. 822 (1963); *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745 (1963); cf. *Henry v. Mississippi*, 379 U.S. 443, 85 S. Ct. 564 (1965).

[9] Defendant-petitioner's letter requesting withdrawal stated:

"June 12, 1962

"Honorable Judge: ROBERT J. SHADLE
York County Court House
York, Pennsylvania

"Sir: Under the circumstances, I don't feel that a New Trial would be of any benefit to me. My request is to come before you for formal sentencing, not to defer it any longer.

Respectfully yours,
/s/ James Harbold"

[10] The transcript of the June 15 hearing contains these statements:

"DISTRICT ATTORNEY: May it please the court, this is No. 146 January Sessions, 1962, Commonwealth of Pennsylvania vs. James Wilson Harbold. In this case the charge was murder, and the defendant was, by a jury, found guilty of murder in the first degree, and the jury set the penalty at life imprisonment. The defendant had filed various motions in arrest of judgment and for a new trial, and I understand counsel for the defendant desires to take some action thereon.

"MR. RUCH [attorney for the defendant]: May it please the court, on the day following the verdict in this case, I believe it was

er's trial counsel asked if the facts had been correctly portrayed; petitioner affirmed that they had.[11]   There-

Friday, I went to the county jail and there had a long and extended conference with defendant, Mr. Harbold, and Mr. Wire [additional attorney for the defendant] was with me, and at that time I advised the defendant of his rights with respect to a new trial and other motions that were ultimately filed, and pointed out to him what would normally result if any one of several steps were taken, namely, what would happen if a motion for a new trial were filed, a motion for arrest of judgment were filed, what would happen if no motions were filed, and we covered all of the various contingencies and possibilities in what I regard at great length and detail.  The upshot of that conference, which lasted for the better part of an hour or longer, was that Mr. Harbold wished to have Mr. Wire and me as counsel file motions for a new trial and arrest of judgment, and that was accordingly done for the reasons set forth in the motions.  Later I understand, possibly a week ago, through the deputy warden of the county prison, your honor received a communication from the defendant in which he stated that he wished to be sentence [sic] in this case, and that he, I believe, alluded to in the letter a wish that the motion for a new trial be withdrawn and that sentence be imposed.  This morning I went to the county jail and had a conference with the defendant, and once again reviewed the various possibilities with him and asked him whether he clearly understood what he expressed his wishes to be and made certain that there were no outstanding questions of any kind in his mind with regard to the action that has been proposed in his letter, and voluntarily he reviewed with me again the various contingencies and possibilities, whether the motions were withdrawn or not.  Mr. Harbold advised me that he had communicated with the court, that he wanted to come before the court this morning to be sentenced, that he understood that this involved a withdrawal of the motion for a new trial and the motion in arrest of judgment, and that he did it knowingly and understands full well what he was doing. . . ."  [The omitted portion appears in note 11 infra.]

[11] [MR. RUCH:]   ". . . So that the record might show that I have represented to the court the facts that have developed since the jury's verdict, I might ask Mr. Harbold, "Mr. Harbold, have I related to the court a true and correct statement of facts and what has happened since the jury has returned a verdict in this case?  MR. HARBOLD:  Yes.  MR. RUCH:  And is it now your wish to have

after the court imposed sentence.[12]   This record pre-
sents a situation in which petitioner himself chose to
waive the pursual of alleged trial errors about which
he now complains.   The record clearly warrants a con-
clusion of effective waiver.

This is not a case where the defendant did not him-
self choose to forgo the normal post-trial procedures.
Neither is this a case where failure to pursue the es-
tablished procedure was due to mere neglect or inad-

---

Mr. Wire and me as your counsel withdraw the motion for a new
trial and arrest of judgment and then present yourself to this court
for sentence?  MR. HARBOLD:  Yes.  MR. RUCH:  And that is your
wish, to have it carried out now?  MR. HARBOLD:  Under the cir-
cumstances, yes.  MR. RUCH:  And you understand you will be sen-
tenced in accordance with the jury's verdict?  MR. HARBOLD:  Yes.
MR. RUCH:  And you understand if this is done, you may not there-
after file a motion for a new trial or arrest of judgment?  MR.
HARBOLD:  Yes.  MR. RUCH:  You understand that?  MR. HARBOLD:
Yes.  MR. RUCH:  And you still wish it to be done?  MR. HARBOLD:
Yes.  MR. RUCH:  The matter for discretion in sentence is not for
the court or me because the jury has already done that, and there-
fore I don't wish to stress to the court why leniency should be
shown.  There can't be any discretion in this case.  I therefore re-
quest the court to permit me and Mr. Wire to withdraw on be-
half of the defendant the motion for a new trial in this case and
the motion for arrest of judgment filed in this case.  THE COURT:
Under these circumstances, the motions may be withdrawn.  MR.
RUCH:  And having been withdrawn, Your Honor, the defendant
now presents himself for sentence in this case.  THE COURT:  I
have a letter from the defendant, apparently in his handwriting,
dated June 11, 1962, in which he states substantially what his coun-
sel has referred to, and I direct this letter be made a matter of
record.  Mr. Harbold, is there anything further you would like to
say to me?  MR. HARBOLD.:  No."

[12] "THE COURT:  In this case in which the defendant has been
convicted by a jury of the offense of murder in the first degree,
and in which the jury has fixed the penalty at life imprisonment,
the sentence of the court is that the defendant undergo imprison-
ment in a state correctional institution, by separate' and solitary
confinement at labor, for and during the term of his natural life,
and that he stand committed until this sentence be complied with."

vertence. Nor is it a case where the defendant can plausibly deny either that he understood the alternatives open to him or deny that he comprehended the consequences of his withdrawal. Furthermore, the record relating to the withdrawal of the post-conviction motions is entirely free from any suggestion of coercive circumstances.[13]

---

[13] The standards articulated in *Fay v. Noia,* supra, note 8, were set forth for the federal courts, as we have noted. While we doubt that our standards for finding a deliberate avoidance of our established procedure would differ materially from those applicable in the granting of federal relief, we need not now decide whether there is any variance whatever. Even embracing a test comparable to the one used in the federal courts, we find that the instant case, as we test it against the standards set forth in *Noia,* is one in which there has been a deliberate by-passing.

In *Noia,* as here, the defendant had been convicted of first degree murder. There, too, there was no timely, direct post-trial review. The Supreme Court of the United States held that Noia's failure to follow normal state procedures did not constitute an intelligent and understanding waiver of his right to review. However, the Court noted: "This is not to say that in every case where a heavier penalty, even the death penalty, is a risk incurred by taking an appeal or otherwise foregoing a procedural right, waiver as we have defined it cannot be found. Each case must stand on its facts." 372 U.S. at 440, 83 S. Ct. at 849. And the Supreme Court went on to observe that in that case the trial judge had made the possibility of a death sentence upon any retrial a grisly, palpable, acute possibility. Ibid. There was no comparable external factor in the case before us. It should also be observed that in this Commonwealth, the penalty for first degree murder is fixed, not recommended, by the jury. If the jury cannot agree, unless a retrial is ordered, the judge fixes the penalty at life imprisonment. Act of June 24, 1939, P. L. 872, §701, as amended by Act of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701. Therefore, if a defendant successfully presses a post-trial motion, on retrial he faces the exact possibilities he faced at his first trial.

If, indeed, there are cases in which a deliberate by-passing may be found in spite of the fact that a death penalty is a risk incurred by taking an appeal or otherwise pursuing a procedural right, this is such a case.

The courts of this Commonwealth, and most especially in recent times, have earnestly sought to provide a fair and full adjudication of all federal and state constitutional claims. This Court has exercised particular vigilance to see that, on both direct and collateral review, claims of federal, as well as state, constitutional rights are comprehensively and justly entertained and decided by our state courts.[14] Federal rights concern us as much as any other rights which we are charged to enforce. This practice has frequently been maintained even where established post-trial procedures may have been negligently or inadvertently ignored. Indeed, the practice has been followed even where there has been some possibility of a conscious choice to forgo the usual direct review provided, but where the record nevertheless does not clearly support a finding of intelligent, understanding waiver of orderly review procedures.[15] We have no intention of departing from our purpose of solicitously insuring that rights constitutionally conferred are not unduly forfeited. The case presently before us, however, falls into a different category.

This case is one in which there has been no undue forfeiture. It is one in which the record reveals that

---

[14] See *Henry v. Mississippi*, 379 U.S. 443, 452-53, 85 S. Ct. 564, 570 (1965).

[15] Where problems arising under *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), have been presented and objection had been raised at trial, we have not looked to see whether or not there has been any appeal or intentional decision not to appeal. This is, in part, for the reason that the problems raised by the use of the procedure invalidated by *Jackson* stand on a different footing, for substantially the reasons enunciated in *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965). And even if a timely appeal had been sought, there would have been no review sufficient to reach and solve the problems raised by the practice of submitting the question of voluntariness to the jury without a prior, complete, independent pre-trial determination of defendant's claims that his confession was involuntary.

petitioner understandingly decided to by-pass our post-trial review procedures. Justice can best be accomplished in an orderly framework, and when a defendant deliberately by-passes the adequate means provided for review of alleged errors he cannot insist that the state must now, at his discretion, provide an additional opportunity for review of his once abandoned contentions. There is every reason to hold such a defendant to his waiver instead of permitting him to reopen the case at whatever time the defendant chooses, at a juncture when witnesses may have disappeared, memories may have faded, and other evidence may no longer be available. The problems may be aggravated because a deliberate decision by a defendant to forgo established state remedial procedures induces and creates a justifiable belief and appearance that the case has been finally concluded.

Surely, the protections afforded one convicted of crime do not include the right to knowingly reject available post-conviction procedures without being bound by the consequences of such planned rejection. The orderly and expeditious disposition of criminal litigation, as well as the desirability for finality after opportunity for adequate review, precludes this defendant from exercising the privilege of asserting errors at a time or in a manner contrary to the currently established and applicable rules for the adjudication of such issues.

It is needless to dwell on the desirability of prompt review and on the difficulties presented by delayed review, difficulties which, among other things, affect both the ability to conduct satisfactorily a comprehensive habeas corpus hearing and the ability to proceed effectively with a new trial if one is required.

We need go no further in this case than to hold that the lower court could have placed dismissal of the petition on the ground that, in light of the facts and rec-

368

ord of this case, petitioner deliberately by-passed the procedures which were available to test the contentions he now seeks to assert. Because of this waiver, petitioner is precluded at this unduly postponed stage from successfully pursuing them in our courts.

Order affirmed.