Commonwealth *v.* Scatena, Appellant.

536

Argued March 13, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Malcolm Anderson,* with him *Griggs, Moreland, Blair & Anderson,* for appellant.

*Charles B. Watkins,* Assistant District Attorney, with him *Edwin J. Martin,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 27, 1968:

On March 15, *1958,* Vincent Scatena was convicted by a jury of murder in the first degree. He was subsequently sentenced to a term of life imprisonment. Although no direct appeal was taken from the judgment of sentence, Scatena now seeks a new trial by way of a Post Conviction Hearing Act petition. The petition was denied by Judge WEISS of Allegheny County, who, incidentally, presided at Scatena's trial.

Appellant Scatena's petition is based solely on the ground that he had been deprived of his Constitutional right to a fair trial by prejudicial publicity which existed prior to and during his trial.

Scatena was convicted of the felony murder of Elizabeth Ensinger, an 84-year-old lady. The Commonwealth proved that Scatena planned and made the arrangements, with Frank Zaffina, Michael Popovich, William Garrison and his wife, Ann Garrison, for the burglary of Mrs. Ensinger's home in Pittsburgh. When Zaffina and Popovich entered Mrs. Ensinger's home for the purpose of robbing her, Popovich put his hand over the victim's mouth; she bit him, whereupon he struck and stabbed her, as the result of which she died.[*]

Scatena was the first of the accomplices to be brought to trial. At this trial both Zaffina and Popovich testified as Commonwealth witnesses. Subsequent to Scatena's conviction, Zaffina and Popovich pleaded guilty to murder, and were then adjudged guilty of murder in the first degree and sentenced to life imprisonment. Ann Garrison, after pleading guilty to murder, was adjudged guilty of murder in the second degree and sentenced to the Industrial Home for

---

[*] The facts of the crime are more fully set forth in *Commonwealth v. Garrison,* 398 Pa. 47, 157 A. 2d 75, and in *Com. ex rel. Zaffina v. Maroney,* 423 Pa. 237, 223 A. 2d 678.

Women at Muncy. William Garrison, who denied his guilt, was tried and convicted of murder in the first degree and sentenced to life imprisonment on March 22, 1958.

The prejudicial pretrial newspaper reporting which Scatena complains of in his petition was as follows:

"(a)  The November 22, 1957 issue of the Pittsburgh Press carried this headline, 'Scatena Held in $20,000 Bail'. Under this headline was a news story in which the prosecutor says that Scatena is a very dangerous risk and that even his bondsman was unable to locate him for three days.

"(b)  The November 23, 1957 issue of the Pittsburgh Press ran a large news story on Scatena building up a 'wall of silence' and that he answers the questions the police ask him by saying that he refuses to answer that question on grounds that it might tend to incriminate him. The article continues that with his attorney beside him, he answered even the most innocent questions, such as 'what time is it' with this answer.

"(c)  The December 17, 1957 issue of the Pittsburgh Press ran a front page article on the inquest of Scatena and in a series of four pictures showed the prosecutor's star witness faint after testifying to what kind of person Scatena was. The headline reads 'Scatena Called Master Criminal', and the article said that Scatena today was pictured as a cold-hearted master criminal who kept a retinue of hoodlums to operate a little kingdom of crime. The state's witness said that Scatena always carried a gun on his hip and kept a machine gun behind the bar of his grill. During the inquest, the article reports, 'Scatena slouched in his chair twiddling his thumbs and that a half-smile flickered across his face occassionally [sic]."

With respect to the trial, Scatena contends that a "carnival atmosphere" existed, represented by the following:

"(a)  In the March 11, 1958 and March 12, 1958 issues of the Pittsburgh Press and of the Pittsburgh-Sun Telegraph there appeared a total of eight photographs of the actual trial in progress.  In these eight pictures, the jury appears four times, the judge appears four times and Mr. Scatena appears six times.  *These photographs were taken without the use of flashbulbs through an open transit above the doors leading into the courtroom.**  It wasn't until March 13, 1958 that Chief Justice JONES of the Pennsylvania Supreme Court finally ordered the photographing of the Scatena courtroom stopped.

"(b)  The March 11, 1958 issue of the Pittsburgh Press has an article in which a photograph of the jury foreman is shown for the Scatena trial and then gives the names and addresses of the jurors for this trial.

"(c)  The March 12, 1958 issue of the Pittsburgh Press carries an article in which a reporter studies the Scatena trial and tells how the British Courts differ."

The Commonwealth admits the existence of the newspaper reports and publication of the photographs which were taken through an open transom above the doors leading into the courtroom.  The Commonwealth, however, denies the existence of a "carnival atmosphere," and further denies that Scatena's Constitutional rights were violated in any way by the aforesaid publicity.  We agree with the Commonwealth.

Prior to trial, Scatena's attorneys, who were experienced in the trial of criminal cases, petitioned the Court for a change of venue and for a continuance, which was based partly on the newspaper publicity

---

\* Italics, throughout, ours.

which was given to the crime in Pittsburgh. At the hearing on that petition, *defense counsel withdrew the request for change of venue,* but pursued the motion for continuance, which was denied. The Court based its denial of that petition on (1) the fact that defense counsel had been given adequate opportunity to prepare for trial, and (2) a failure to find "any unfounded inflammatory, derogatory, castigating or any such similar statement tending to incite or unduly arouse the populace of this community against the defendant regardless of the gravity of the murder committed."

The record contains only a part of the voir dire examination of the jury. However, it shows that defendant was permitted an extensive examination on the issue of pretrial publicity, and there is no evidence in the record that any juror had a *fixed* opinion as a result of, or was prejudicially affected by the pretrial publicity. As to pretrial and prejudicial publicity, see, *Commonwealth v. Swanson,* 432 Pa. 293, 248 A. 2d 12, and cases cited therein; *Com. ex rel. Ryan v. Rundle,* 411 Pa. 613, 192 A. 2d 362.

No objection was made by defense counsel to the taking of the above-mentioned photographs and their publication in the Pittsburgh newspapers until the fourth day of the trial, at which time, we repeat, Chief Justice CHARLES ALVIN JONES ordered this photographing to be immediately stopped. We do not know whether the motion for a new trial which was filed on petitioner's behalf by his attorney alleged that the aforesaid publicity deprived defendant of a fair trial, *but in any event petitioner's motion for a new trial was withdrawn* and, we repeat, no appeal was taken to this Court.

This Court recently had occasion to consider contentions similar to those which are now made by Scatena: *Commonwealth v. Swanson,* 432 Pa., supra. Of course Scatena was entitled to a fair and im-

partial jury, free from prejudice, passion and bias. Our study of the record in this case convinces us that a fair and impartial jury tried the case and that the defendant was not deprived of due process of law.

Scatena's present petition relies principally on the recent U. S. Supreme Court decision in *Sheppard v. Maxwell*, 384 U.S. 333. In that case, the Supreme Court ruled that failure of the trial Judge to protect the defendant from the massive, pervasive, virulent and prejudicial publicity which saturated the community and which prevailed outside and inside the courtroom, and the Judge's failure to control the many disruptive influences and conduct in the courtroom amounted to a denial of due process and required a new trial or defendant's release from custody. We shall not attempt to itemize or describe the highly prejudicial publicity or all of the facts and circumstances and events which occurred in the *Sheppard* case. In our judgment, the publicity, and the conduct and decorum in the courtroom during Scatena's trial was not of such a prejudicial character as to bring it within the *Sheppard* case or within *Estes v. Texas*, 381 U.S. 532, or *Irvin v. Dowd*, 366 U.S. 717.

Defendant's failure to take a direct appeal constitutes, in our opinion, a waiver of Scatena's right to now raise the question. Section 4 of the Post Conviction Hearing Act of 1966, P. L. (1965) 1580, 19 P.S. §1180-4, provides in pertinent part: "(b) For the purposes of this act, an issue is waived if (1) the petitioner knowingly and understandingly failed to raise it and it could have been raised . . . on appeal . . . (c) there is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure." See also, *Com. ex rel. Harbold v. Myers*, 417 Pa. 358, 207 A. 2d 805. There has been no proof that Scatena's failure to appeal or to previously raise this issue was not a "knowing and un-

derstanding failure." Furthermore, we believe defendant waived the rights which he now claims, and in any event there was no basic or fundamental error.

We disapprove some of the newspaper reporting and publicity, particularly that which characterized Scatena as a master criminal who kept a retinue of hoodlums to operate a little kingdom of crime. Furthermore, we will not permit the photographing or television of a criminal trial or radio broadcasting of Judicial proceedings in the courtroom, or even from outside the courtroom or through a courtroom door or transom. Cf. Rule 53 of the Federal Rules of Criminal Procedure, Title 18, U.S.C.A.; ABA Canons of Judicial Ethics, No. 35; Canons of Judicial Ethics of the Supreme Court of Pennsylvania, Rule 35, 425 Pa. xxxvi; *Mack Appeal*, 386 Pa. 251, 264-265, 126 A. 2d 679.

Our examination of the record fails to disclose that either the pretrial publicity or the taking of pictures during the trial precluded the jury from acting fairly and impartially, or denied Scatena his Constitutional right to due process of law, or discloses any right to a new trial.

Order affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority because the record establishes that in the court below the appellant waived the claims he now seeks to assert in this Court.