**Vincent SCATENA, Petitioner,**

**v.**

**Joseph BRIERLEY, Superintendent, Western Correctional, Diagnostic and Classification Center of Pennsylvania, Respondent.**

**Civ. A. No. 69-627.**

United States District Court,
W. D. Pennsylvania.
March 23, 1970.

Malcolm Anderson, Griggs, Moreland, Blair & Anderson, Pittsburgh, Pa., for petitioner.

Robert L. Campbell, Asst. Dist. Atty., Pittsburgh, Pa., for respondent.

## OPINION

GOURLEY, Senior District Judge.

This is a Petition for Writ of Habeas Corpus filed by counsel on behalf of a

State prisoner. An evidentiary hearing has been conducted, and the Court renders its Opinion upon a complete review of both the entire records of the State proceedings and the record filed and briefs and proposed findings submitted in this federal proceeding. Relief is denied.

Petitioner was indicted for murder at No. 13 O & T January Sessions in the Court of Common Pleas of Allegheny County, Pennsylvania. Upon trial by jury, he was convicted of murder in the first degree and sentenced to life imprisonment. No appeal was taken, petitioner having voluntarily withdrawn his Motion for New Trial.

In 1966, present counsel for petitioner filed in the Court of Common Pleas of Allegheny County a Post-Conviction Hearing Act Petition asserting therein that petitioner had been denied a fair trial due to alleged adverse pre-trial publicity and an alleged "carnival" atmosphere at his trial. Upon an Answer being filed by the Commonwealth, the Court of Common Pleas dismissed the Petition without hearing, reasoning that petitioner had waived his right to a new trial by having previously withdrawn his motion for the same at trial. On appeal from the dismissal of petitioner's Post-Conviction Hearing Act Petition, the Supreme Court of Pennsylvania affirmed. In affirming, the Supreme Court confirmed the existence of a waiver and, alternatively, determined that petitioner had not been denied a fair trial.

■■ This Court is confronted with the same issues decided by the Supreme Court of Pennsylvania. With respect to the question of waiver, this Court is bound to make an independent determination, applying federal standards. A waiver of a constitutional right must be knowingly and understandingly made and every presumption against a waiver must be indulged. United States ex rel. Bolognese v. Brierley, 412 F.2d 193, 3d Cir., decided May 28, 1969.

The evidentiary hearing conducted in this Court has afforded petitioner his first opportunity to rebut the statutory presumption of waiver applied by the State Courts. It is argued on behalf of petitioner that petitioner in 1958 could not waive the constitutional rights "created" by the subsequent decisions of the Supreme Court of the United States in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), for the reason that these constitutional rights were unknown to him at the time of trial.

■ At the time of petitioner's trial in 1958, the constitutional right to fair trial encompassed a well established guarantee against the intrusion of prejudicial public sentiment. But whether the right to fair trial also contemplated a guarantee of freedom from the disruptive influences of telecasters and other reporters within the courtroom was then in doubt. A criminal defendant may not be deemed to have waived a right the existence of which was then doubtful. United States ex rel. Allison v. New Jersey, 418 F.2d 332, 3d Cir., decided October 29, 1969. Indulging every presumption against waiver and giving petitioner every benefit of doubt, the Court finds that he did not waive his right to assert the alleged conjunctive influence of pre-trial publicity and the courtroom atmosphere upon his trial.

Nevertheless, the Court finds that the fundamental fairness of petitioner's trial was unimpaired by the pre-trial publicity and the attendant courtroom atmosphere. The Supreme Court of Pennsylvania considered substantially all of the evidence which has been proffered by counsel for petitioner in this federal proceeding, despite the fact that petitioner was denied an evidentiary hearing in the State post-conviction proceeding. The issues of pre-trial publicity and the courtroom atmosphere were raised and documented with evidence by petitioner's three able counsel during the course of the original criminal proceedings and substantially all of the evidence

relied upon by present counsel for petitioner both on appeal to the Supreme Court of Pennsylvania and in this federal collateral attack is part of the original criminal record.

Pursuant to Section 2254 of Title 28 of the United States Code, this Court, upon being satisfied of the adequacy of the fact-finding process in the State post-conviction proceedings, may adopt the findings therein. However, in this proceeding, I believe the better practice should be for this Court to make its own independent findings and conclusions.

■ Petitioner proffered for review by the Supreme Court of Pennsylvania newspaper articles already introduced in evidence in the original criminal proceedings and other portions of the original record, in order to substantiate the assertion of prejudicial pre-trial publicity. In an effort to fill a relative void in publicity occurring during the three months prior to the sequestration of the jury for trial, petitioner has introduced in the evidentiary hearing in this Court two additional newspaper articles which report the State's exercise of protective custody over an accomplice on February 25, 1958 and the guilty pleas of two other accomplices on March 5, 1958, both of which appeared within two weeks of the trial commencing on March 11, 1958. The Court finds that these newspaper articles, standing alone or when considered with the other publicity already in evidence, did not constitute publicity of a quality and/or quantity such as to threaten a fair trial of petitioner.

■ In addition, to support his contention that there existed a carnival atmosphere in the courtroom during his trial, petitioner testified at the evidentiary hearing in this Court that a continual din of noise existed among the spectators at the rear of the courtroom. Considered alone or together with the evidence placed before the Supreme Court of Pennsylvania, the Court finds no basis for a conclusion that petitioner's right to a public trial became distorted into a deprivation of his right to a fair trial by virtue of any intrusions into the courtroom in the nature of those proscribed by recent Supreme Court decisions.

The facts newly adduced at the evidentiary hearing in this Court upon the question of the fairness of petitioner's trial dictate the application of no reasoning different from that applied by the Supreme Court of Pennsylvania. The Court finds that the Supreme Court of Pennsylvania has correctly applied the principles of the Fourteenth Amendment and is wholly in accord with the result reached by that Court.

■ In a habeas corpus proceeding, which is a civil action, the burden of proof is on the prisoner petitioner to establish his right to relief by the fair preponderance or the weight of all the credible evidence and from the reasonable deductions and inferences which can be drawn therefrom.

In my considered judgment based on and after a most meticulous review and consideration of all the State Court records, trial and appellate, the oral and documentary evidence introduced in this Court, the reasonable inferences or deductions which can be drawn therefrom, the stipulation of the parties, the briefs of counsel, arguments, suggested Findings of Fact and Conclusions of Law and our own independent research, the Court is of the opinion and so concludes that the petitioner prisoner has not met the burden of proof that he is entitled to the granting of a Petition for Writ of Habeas Corpus and/or in the alternative a new trial.

In addition to adopting as Findings of Fact statements made in the body of this opinion, the Court enters the following additional Findings of Fact.

1. On November 17, 1957, Elizabeth Ensinger, 84 years of age, was beaten to death in her home in the Oakland district of Allegheny County, Pennsylvania.

2. Implicated in the crime were the petitioner, Michael Popovich, Frank Zaffina, William Garrison and Ann Garrison, his wife.

3. Petitioner was arrested for his participation in the murder of Elizabeth Ensinger on November 21, 1957.

4. Petitioner was indicted at No. 13 January Sessions, 1958, Criminal Courts of Allegheny County, Pennsylvania, on a bill charging Murder and Voluntary Manslaughter.

5. Michael Popovich was indicted for murder at No. 11, January Sessions, 1958, Oyer & Terminer of Allegheny County, Pennsylvania. He entered a plea of guilty on March 5, 1958, and was sentenced to life imprisonment on May 23, 1958.

6. Frank Zaffina was indicted for murder at No. 14, January Sessions, 1958, Oyer & Terminer of Allegheny County, Pennsylvania. He entered a plea of guilty on March 5, 1958, and was sentenced to life imprisonment on May 23, 1958.

7. Petitioner was initially represented by retained counsel, Pearce O'Connor, Esquire and subsequently by retained counsel Alexander Cooper, Esquire, Marjorie Hanson Matson, Esquire, and Melvin Swartz, Esquire. One of said attorneys was a former State trial judge, and each were and are most experienced, competent and capable trial attorneys in the field of criminal law.

8. On February 20, 1958, a hearing was held before Judge Samuel A. Weiss on petitioner's request for continuance and change of venue.

9. At the time of the hearing on February 20, 1958, petitioner voluntarily withdrew his request for change of venue.

10. The record of the hearing of February 20, 1958, held on the motion to continue, has been admitted in evidence. There was considerable evidence of pretrial publicity, including a scrapbook of newspaper clippings, testimony of radio and television coverage and several magazine articles in nationally circulated magazines.

11. At the hearing on February 20, 1958, counsel for petitioner offered, as reason for the requested continuance, the fact that more time was needed to prepare said case for trial.

12. On February 24, 1958, Judge Weiss denied the request for continuance by Opinion and Order of that date.

13. On March 10, 1958 a Motion was presented by petitioner asking for a continuance based on the publicity that occurred between the former motion and the trial. The transcript of the hearing has been admitted in evidence. It reveals that two acts of publicity were complained of by petitioner's counsel. First, the pleas of Zaffina and Popovich were taken in open court on March 5, 1958 and given wide publicity. Second, that television cameras and a great number of reporters were present in court at the time of Mrs. Garrison's commitment. The motion was denied.

14. On March 10, 1958 a jury was selected. Each prospective juror was extensively questioned by counsel for petitioner as to their knowledge of pretrial publicity concerning petitioner and its effect upon them as potential jurors.

15. Nineteen jurors were challenged by petitioner, sixteen jurors were challenged by the Commonwealth, and sixteen jurors were excused by agreement. The jurors as finally selected, under oath expressed an absolute freedom from bias or prejudice.

16. Petitioner was tried for felony murder at No. 13, January Session, 1958, Oyer & Terminer of Allegheny County. The jury trial began March 10, 1958 before the Honorable Samuel Weiss.

17. Trial and the taking of testimony commenced March 11, 1958, *all witnesses were segregated and the jury sequestered throughout the proceedings.*

18. Petitioner admits that the jury in no way had access to any form of news media or other communications concerning the trial subsequent to March 10, 1958.

19. During the trial there appeared in the Pittsburgh Press and the Pittsburgh Sun-Telegraph for the editions of March 11, 1958 and March 12, 1958 sev-

eral pictures of the trial in progress. Some of these pictures were taken from a transom over the door behind the judge on the bench. This door leads to the judge's chambers. In the taking of these pictures the head of the photographer and his camera were visible to the jury and the counsel.

20. Rule 223 (b) of the Rules of Civil Procedure of Pennsylvania, 12 P.S. appendix, reads as follows:

"During the trial of actions the court shall prohibit the taking of photographs and motion pictures in the courtroom and the transmission of communication by telegraph, telephone, or radio in or from the courtroom"

This rule was adopted by the Supreme Court of Pennsylvania on September 8, 1938, and was effective March 20, 1939. It was in effect at the time of the trial of petitioner.

21. On March 13, 1958, Chief Justice Charles Alvin Jones of the Pennsylvania Supreme Court directed Judge Samuel Weiss to stop all photographing of the trial in progress.

22. Immediately upon receipt of Chief Justice Jones' advice, Judge Weiss prohibited absolutely any further photo coverage of the trial proceedings.

23. At no time during the trial proceedings were photographs taken inside the courtroom nor were flashbulbs or attachments used in the taking of pictures.

24. On March 14, 1958, discussion was had in chambers between counsel for petitioner, the Assistant District Attorney and Judge Weiss concerning the publicity given the trial proceedings. There is no indication of record that petitioner complained of prejudice on the part of the jury or requested relief at this time.

25. During the course of the trial the record discloses only two occasions when the trial judge had to warn spectators in regard to disrupting proceedings. Both were the result of descriptive language used by one of the witnesses.

This course of action on the part of the trial judge was proper under all the circumstances.

26. Petitioner admits that the only disturbance or commotion during trial occurred due to the spectators talking which created an overall din.

27. The jury trial concluded March 15, 1958 with a verdict of guilty and a recommendation of life imprisonment.

28. Post-trial motions were filed by petitioner and voluntarily withdrawn, by his acknowledged written consent, on May 14, 1958.

29. Petitioner admits that the reason for his withdrawal of post-trial motions was on the advice of counsel and because he was afraid that a re-trial would result in the death penalty.

30. Petitioner was sentenced to a term of life imprisonment.

31. No direct appeal was taken by petitioner from the verdict and sentence.

32. In August, 1966, petitioner filed a petition pursuant to the Post-Conviction Hearing Act, 19 P.S. § 1180 et seq., alleging that his Constitutional rights to a fair trial were violated by "the prejudicial newspaper reporting before the trial and the carnival atmosphere which continued throughout the trial." This petition was denied by a written opinion of the trial judge without a hearing being held.

33. Petitioner appealed the denial of his Post-Conviction Hearing Act petition to the Supreme Court of Pennsylvania at No. 208 March Term, 1967 and on November 27, 1968 the Supreme Court of Pennsylvania affirmed the Order of the lower court at Commonwealth v. Scatena, 432 Pa. 535, 248 A.2d 17.

34. Chief Justice Bell found that the record did not disclose a denial of petitioner's Constitutional right to due process. He said, "There has been no proof that Scatena's failure to appeal or previously raise this issue was not a 'knowing and understanding failure'. Furthermore, we believe defendant waived the rights which he now claims, and, in any event, there was no basic or funda-

**412**

mental error." Mr. Justice Roberts concurred because Scatena "waived the claims he now seeks to assert in this Court."

35. Petitioner petitioned for post-conviction relief within seven months after the passage of the Post-Conviction Hearing Act of 1966. The petition came within one month of the decision of the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) upon which petitioner relied in the petition.

36. Petitioner has exhausted the State remedies available to him.

37. More competent and capable counsel could not have been secured to represent the petitioner's interests, as will be reflected by a full and complete reading of all State trial records. Said attorneys were also not appointed but retained and paid by the petitioner's own choice.

38. Petitioner has been continuously in custody since his conviction and is presently in the custody of the respondent, Joseph R. Brierley, Superintendent of the State Correctional Institution at Pittsburgh, Pennsylvania.

In addition to the conclusions of law set forth in this opinion, the Court enters the following additional Conclusions Of Law.

1. This Court has jurisdiction. The petitioner has exhausted his remedies available under the laws of the Commonwealth of Pennsylvania.

2. Petitioner received a fair trial.

3. Petitioner's Constitutional Rights were not violated.

■ 4. The petitioner is not barred from raising his Constitutional right to due process by reason of not pursuing his motion for a new trial. At that time he and his counsel did not have the benefit of the decision in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1966). He acted with reasonable speed after that decision was handed down.

■ 5. The Constitutional right to due process, as raised in this case and as applied in the Sheppard case, may be applied retroactively. This matter has been most thoroughly and completely considered by this Court but the granting of favorable relief is not indicated.

■ 6. The use of television in the courtroom at the habeas corpus proceedings of the material witness, Ann Garrison, and the permitting of photographing of petitioner's trial were contrary to the Canons of Judicial Ethics of the American Bar Association, and to Rule 223(b) of the "Business of the Courts" chapter of the Rules of Civil Procedure in effect at the time of the occurrences. This irregularity was harmless error.

7. There is no evidence that the photographing of the trial or the television coverage of the pretrial habeas corpus proceedings produced a specific harm or prejudice to the defendant, and no juror had any knowledge thereof.

8. The pretrial and trial publicity accorded the crime and proceedings against petitioner were such as are normally accorded to crimes of this nature, were factual and not inflammatory, and in no way created an atmosphere which was fundamentally prejudicial to petitioner.

9. There was no prejudice nor possibility of prejudice on the part of the jury against petitioner.

10. Procedures employed by the Commonwealth did not raise any probability that prejudice would result which was inherently lacking in due process.

11. A "carnival atmosphere" did not exist at any time in the trial proceedings.

12. The cases of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1966), and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), are distinguishable from and inapplicable to the instant facts and circumstances.

13. The most competent and capable trial judge exercised complete and proper

control over the trial proceedings, as he was required to do.

14. There was maintained normal maintenance of judicial serenity and calm in the courtroom such as commonly exists in cases of public interest where a grievous and brutal crime has been committed.

15. The trial was conducted without unusual interference from all members of the press and news media.

16. Due to the sequestration of the jury at all times, the jury and the petitioner were absolutely and completely protected and kept free of interference of mind or body by any person or persons, and the verdict as returned was fair, impartial, unbiased and unquestionably, not only justified but required under all the evidence and applicable law.

The petitioner prisoner is not entitled to a new trial.

The petitioner is not entitled to the issuance of a Writ of Habeas Corpus.

An appropriate Order is entered.