UNITED STATES of America ex rel.
David ROBINSON

v.

Alfred T. RUNDLE, Superintendent.
Civ. A. No. 70–705.

United States District Court,
E. D. Pennsylvania.
Dec. 30, 1970.

1969) and United States v. Holmes, 387 F.2d 781 (7th Cir. 1968).

884

Andre L. Dennis, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for petitioner.

T. Michael Mather, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

OPINION

LUONGO, District Judge.

On May 24, 1962, David Robinson appeared in the Court of Quarter Sessions, Philadelphia, to stand trial on several indictments and charges: (1) No. 2412, February Sessions 1962 (aggravated robbery); (2) No. 778, December Sessions 1961 (burglary, larceny, and receiving stolen goods); (3) Nos. 705–707, August Sessions 1960 (charging, *inter alia*, burglary, larceny of an automo-

bile, larceny, and operating a motor vehicle without the consent of the owner).

At the request of the prosecuting attorney, trial on No. 2412 was continued due to the unavailability of defense witnesses.[1] Robinson entered a plea of guilty to No. 778. After trial by a judge without a jury on Nos. 705–707 he was found guilty on No. 705 and not guilty on Nos. 706 and 707.

Robinson has filed a petition for writ of habeas corpus in this court[2] contending that these convictions were obtained in violation of his federal constitutional rights in that (1) the guilty plea on No. 778 was not voluntarily and intelligently entered; (2) he was ineffectively represented because of late appointment of counsel, and the ineffectiveness of counsel was evidenced, *inter alia*, by counsel's waiver of a jury trial, and by counsel's failure to request a severance, and (3) sentence was imposed in the absence of counsel.

Counsel was appointed to represent Robinson in these habeas corpus proceedings. Evidentiary hearings were held on July 22 and September 9, 1970. From a review of the state court records and from the evidence adduced in this court, I conclude that relator's claims are without merit and the petition for writ of habeas corpus will be denied.

### (1) Guilty Plea on No. 778.

■ Due process requires that a plea of guilty be made voluntarily and with a full understanding of the consequences [United States ex rel. Ackerman v. Russell, 388 F.2d 21 (3d Cir. 1968)] because

it is in legal effect a conviction [Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)] which "operates as a waiver of all the constitutional, statutory, and judicially created safeguards afforded a defendant in a trial * * *" United States ex rel. Crosby v. Brierley, 404 F.2d 790, 797 (3d Cir. 1968). See United States v. Ptomey, 366 F.2d 759 (3d Cir. 1966); United ed States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3d Cir. 1965).

■ Relying on United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3d Cir. 1968) and related cases,[3] Robinson has argued that the Commonwealth has the burden of proving that his guilty plea was voluntarily and intelligently entered since no on-the-record inquiry on these questions was made by the trial court.[4] But in United States ex rel. Grays v. Rundle, 428 F.2d 1401 (3d Cir. 1970) the Court of Appeals held that where an accused was represented by counsel at the time the plea was entered, the burden of proving invalidity of the plea is on the relator. See also United States ex rel. Jones v. Russell, 320 F. Supp. 1028 (E.D.Pa., filed October 13, 1970); United States ex rel. Kidd v. Commonwealth of Pennsylvania, 320 F. Supp. 1201 (E.D.Pa., filed October 1, 1970). Robinson was represented by counsel at the time of the entry of the plea and it is his burden, therefore, to prove that the plea is invalid.

■ The only evidence offered by Robinson on the issue of lack of voluntariness and intelligence of the plea was his testimony to the effect that, without

---

1. On the day before, the prosecuting attorney had mistakenly informed defense counsel that No. 2412 was not listed for trial and that he need not subpoena defense witnesses on that indictment. Indictment No. 2412 was eventually nol prossed.

2. Relator has previously attacked his conviction by way of five separate petitions for writ of habeas corpus in the state courts and various complaints under the Pennsylvania Post Conviction Hearing Act, 19 P.S. § 1180–1 et seq.

3. United States ex rel. Fear v. Com. of Pa. (Rundle), 423 F.2d 55 (3d Cir. 1970); United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968).

4. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) the Supreme Court held that the absence of such an inquiry invalidates the plea. The Third Circuit has held that *Boykin* is not to be applied retroactively. United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3d Cir. 1969).

the benefit of prior discussion with counsel, he, Robinson, for the first time decided in open court to plead guilty to No. 778 because he became confused and afraid when they called him for trial on several cases. He testified that although he understood that by pleading guilty he was admitting responsibility for the crime, he did not understand the "legal ramifications" of the plea, and the "legal ramifications" were not explained to him by his court-appointed attorney, Bernard L. Segal, Esq. (who was at that time first assistant Voluntary Defender), or by the presiding judge, the Honorable Mark E. Lefever.

Robinson's testimony was refuted by the records of the Defender's office, the state trial record, and the testimony of Bernard L. Segal.

The Defender's office conducted two interviews with relator prior to trial, one in March, 1962, the other on April 2, 1962. At the latter interview, according to the Defender's records, Robinson indicated his desire (1) to plead guilty to No. 778; (2) to plead not guilty to Nos. 705–707 and to waive a jury trial; and (3) to plead not guilty to No. 2412 and to demand a jury trial.[5]

The state trial record indicates that Robinson himself asked to plead guilty to No. 778 after conversing with counsel. Although on direct examination at the hearing in this court Robnsion testified that this conversation with counsel consisted only of his statement to Segal that he did not wish the Defender's office to represent him, and Segal's statements insisting that Robinson plead guilty, on cross-examination Robinson admitted that Segal told him that there were no defenses available on No. 778. From that it is obvious to me that Robinson did discuss his case with Segal before entering the plea. Further, Robinson admitted at the habeas hearing that it had been his hope that by pleading guilty on the one indictment he would favorably dispose the court toward his innocence on the other charges.

The state record also indicates that the Commonwealth had overwhelming evidence of Robinson's guilt on No. 778. Robinson had been caught red-handed by the police while he was attempting to burglarize a gas station. In a search of his car at the scene, the police found numerous items taken from the premises. Robinson admitted his guilt in open court explaining that he committed the crime while intoxicated and only because his own gas station had previously been victimized. He expressed a desire to make restitution.

Robinson was no stranger to criminal proceedings. On at least one other occasion, while represented by counsel, he had entered a guilty plea. His selection of different pleas and strategies on the various indictments reveals a knowledge of his legal rights and the "legal ramifications" of a guilty plea. See Orr v. United States, 408 F.2d 1011 (6th Cir. 1969). I am satisfied that Segal, an able trial attorney specializing in criminal law, was familiar[6] with the facts and circumstances surrounding the charges and that he discussed Robinson's rights and possible defenses with him before advising him to plead guilty. I conclude that relator, faced with overwhelming evidence of guilt, decided to plead guilty in the hope that he would thereby put himself in a more favorable light in the forthcoming trial on the other charges. He did so voluntarily and with full understanding of the legal consequences. The plea is valid. See United States ex rel. Jones v. Russell, *supra*; United States ex rel. Kidd v. Commonwealth of Pennsylvania, *supra*.

### (2) Ineffectiveness of Counsel.

Robinson charges that his attorney failed to represent his interest effective-

---

5. As explained by Segal's testimony, Respondent's Exhibit 3 contains notations "plea N.G. Jury" at end of notes on No. 2412; "N G Waiver" at end of notes on Nos. 705–707"; and "Plea G" and "for G plea" at end of notes on No. 778.

6. See discussion *infra* under heading "Ineffectiveness of Counsel".

ly because (a) counsel was appointed too late to effectively represent him; (b) the interviews and the investigation by the Defender's staff were perfunctory; (c) counsel failed to advise him as to the consequences of waiving a jury trial; and (d) counsel failed to request severance of trial on Nos. 705–707 after Robinson had entered a plea of guilty to No. 778.

██ Robinson did not meet Segal until just prior to trial. He asserts, therefore, that the burden of proving that he was not prejudiced by the late appointment of counsel is on the Commonwealth.[7] United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968).

██ In Moore v. United States, 432 F.2d 730, 734 (3d Cir. 1970), the *en banc* Court of Appeals held in overruling *Mathis*, that where a prisoner has been represented at trial by an institution such as the Defender's office "the timeliness of the appointment must be measured by the time of the court's appointment of the institution and not by when individual staff members are assigned to perform their specialized duties." The Defender's records indicate that that office began to represent Robinson near the end of March, 1962, a full two months before trial. That was ample time and Robinson, not the Commonwealth, has the burden of proving that the services rendered by the Defender's office were not those exercised with "the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, *supra*, at 736.

██ Here again relator has failed to carry his burden. The only evidence he offered on this issue was his testimony that Segal and the Defender's office had not adequately prepared for trial be-

cause they did not seek out and interview alibi witnesses, had not properly advised him regarding the waiver of a jury trial, and had failed to request a severance.

The records of the Defender's office indicate that at the first interview with Robinson, Robinson stated that he had alibi witnesses for the charges pending against him on Indictment Nos. 705–707. The interviewer noted that further investigation should be made. Accordingly, a second interview was ordered and conducted on April 2, 1962. The report of this interview (Respondent's Ex. 3) consists of a summary of factual data on all offenses and Robinson's selection of pleas. There is a notation of the names of alibi witnesses relating to Indictment No. 2412 but as to Nos. 705–707, it is recorded that Robinson stated that he had observed two men whom he knew by nickname at the scene of the crime, but he would not divulge those nicknames. It appears, therefore, that the matter of alibi witnesses was discussed, but Robinson himself foreclosed any further investigation on Nos. 705–707 by refusing to disclose such information as he had concerning the identity of possible alibi witnesses. Under the circumstances, the Defender's office cannot be charged with dereliction of duty for failing to seek out and interview such witnesses.

Segal testified that he had received the file the day before trial, and from the interviews conducted by other members of the Defender's office, he prepared for trial, taking notes as he did so. (Respondent's Ex. 2). A reading of the trial transcript furnishes ample evidence of Segal's preparedness. He appeared to have all the facts at his command. His cross-examination was effec-

---

7. Relator had previously sought to retain the services of private counsel but was unsuccessful. Judge Lefever ordered relator to stand trial on May 24, 1962 because there had been eight prior continuances. He informed relator that he could represent himself or have Segal represent him. Robinson finally agreed to have Segal represent him. Under the circumstances, the court's insistence on going to trial was proper. See United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

tive and undoubtedly played a major role in obtaining acquittal on two of the indictments.

Robinson's assertion that Segal waived jury trial without his acquiescence is simply incredible. It was Robinson's decision to waive a jury trial on Nos. 705–707 and this decision was communicated to the Defender's office as early as April 2, 1962. Segal testified that he undoubtedly confirmed this decision by consulting with Robinson before announcing it to the court, and I accept his testimony as credible. Robinson did sign the form for waiver of jury trial on May 24, 1962 and I am satisfied that he wouldn't have signed the form if he had not been consulted. I conclude that Robinson knowingly and voluntarily waived his constitutional right to trial by jury, and Segal merely communicated his client's decision to the court upon Robinson's instructions.

The final argument posited by Robinson concerning the alleged ineffectiveness of counsel is that he was severely prejudiced by going to trial before Judge Lefever immediately after pleading guilty to another crime, and that Segal was incompetent because he did not seek a severance. The argument is virtually answered by the result. There was an acquittal on two of the three charges. Robinson was at least partially successful in obtaining the tactical advantage he admittedly sought by pleading guilty to No. 778.

I am satisfied that Segal's representation of relator at trial was competent and was commensurate with the customary skill and knowledge of the legal profession in Philadelphia. See United States ex rel. Kidd v. Commonwealth of Pennsylvania, supra; United States ex rel. Adams v. Rundle, 294 F.Supp. 194 (E.D.Pa.1968).

(3) Representation by Counsel at Sentencing.

Robinson charges that Segal was not physically present in the courtroom at the time Judge Lefever imposed sentence and that his constitutional right to be represented by counsel at every stage was thereby violated.

After Robinson was found guilty on the charges in No. 705, Judge Lefever heard arguments from the assistant district attorney (Casey) and from Segal as to the sentences to be imposed on that bill and on No. 778, to which Robinson had earlier pled guilty. The trial judge reserved decision, announcing that he would impose sentence following another trial he was about to commence. The transcript next reports the proceeding as follows:

"The Court: The District Attorney wanted a very much longer sentence. I am going to leave it eventually up to the Parole Board as to how long you serve. The sentence is one to five years on each bill to run consecutively. Do I need to state where that is?

Mr. Casey: The Eastern State Penitentiary."

(Trial N.T. 59)

There is no mention of Segal's name in the transcript at the point when sentence was pronounced and Robinson contends that Segal's name doesn't appear because he wasn't there. I am not persuaded that that is the case.

At the hearing before me Segal understandably had no independent recollection of the event, but he testified without hesitation and without equivocation that if he had not been present when sentence was pronounced, he would have considered it "egregious and would have insisted upon some correction." (H.C. N.T. 84) I am convinced that that is so. Further, the trial judge, in reviewing Robinson's post trial motions, had before him the same contention and rejected it on his specific recollection that Segal was present at the time.

I am satisfied, and so find, that Segal was present when sentence was pronounced. The fact that the transcript makes no reference to Segal at the point when sentence was pronounced indicates to me only that he did not speak at the moment. He had already made his ar-

gument and it was apparently an effective one, for the trial judge imposed a sentence much less severe than that which the prosecutor sought.

The petition for writ of habeas corpus will be denied.

Andre L. Dennis, Esquire, who represented relator in these habeas corpus proceedings, did so by court appointment and without hope of remuneration. His service has been outstanding and in the highest traditions of the bar. The court gratefully acknowledges his dedication and devotion to his client's cause.