UNITED STATES of America ex rel.
John H. HARDY

v.

Joseph R. BRIERLEY, Superintendent.

Civ. A. No. 70–2734.

United States District Court,
E. D. Pennsylvania.

March 31, 1971.

T. Michael Mather, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

John Hardy was convicted in state court in 1952 on a number of bills of in-dictment (Nos. 550, 552–566, 568–570, March Sessions 1952, Court of Quarter Sessions, Philadelphia County) charging robbery, assault, aggravated robbery, aggravated assault, and assault with intent to ravish, all of which arose out of a series of armed robberies perpetrated by Hardy, alone or with others, during January and February, 1952.

Hardy was sentenced to consecutive terms of 5 to 10 years on eight of the bills (sentence was suspended on the others), a total of 40 to 80 years. Six of the convictions and sentences were later set aside by the state courts (see infra) leaving 5 to 10 year sentences on the two bills under attack here. Hardy was paroled on February 27, 1962 but was returned for violation of parole on June 3, 1965. The maximum sentence on these charges[1] will expire on June 3, 1975.

In this petition for writ of habeas corpus, Hardy attacks two convictions (bill Nos. 558 and 559) stemming from the robbery of a real estate office at 1631 Wallace Street, Philadelphia. He has advanced several grounds for issuance of the writ: (1) there was no formal adjudication of guilt on bills 558 and 559; (2) the fruits of an illegal search and seizure and a coerced confession were used at the trial; (3) he was deprived of the right to a trial by jury; (4) he was denied the effective assistance of counsel; (5) there was insufficient evidence to support a conviction of guilt; and (6) the trial was so unfair as to deny him due process of law.

On March 26, 1952, Hardy and two co-defendants appeared for trial before the Honorable Eugene V. Alessandroni. At the morning session Hardy, in the absence of counsel, entered pleas of guilty to bills 553, 555–557, 560–566, 568–570 and not guilty to bills 550 and 552. (The two latter bills, charging Hardy with assault with intent to ravish, stemmed from incidents connected

---

1. Hardy has sentences of 1 to 2 years for attempted prison breach and 1 to 5 years for aggravated robbery to follow the ex-piration of his sentence on bill Nos. 558 and 559.

with the Wallace Street robbery). As to bills 558 and 559, the record is not clear as to what pleas were entered, either at the morning session or in the afternoon session when Hardy's counsel, Garfield Levy, was present. The trial judge seems to have proceeded on the assumption that Hardy had entered a plea of guilty to all but the fifth count on each of these bills, waiving jury trial as to those counts.

At the trial the following facts were established:

On January 7, 1952, Hardy and Robert Ruffin entered the real estate office of George Parker at 1631 Wallace Street, Philadelphia. Displaying a revolver, Hardy forced Parker and his secretary to lie on the floor. Hardy then took Parker to the rear of the office and ordered him to open a safe, after which he bound Parker and threw him in a closet. While Ruffin rifled some desk drawers, Hardy took the secretary to the rear of the office and made improper advances to her and slapped her. When the secretary warned him that the Brink's men would soon be arriving, Hardy stopped molesting her and put her in the closet with Parker. Detective Sergeant Thomas McDermott of the Philadelphia police testified that Hardy orally admitted his participation in the robbery but denied that he had attempted to ravish the secretary. Hardy testified to the same effect when he took the stand in his defense. A wallet and a pair of earrings which had been stolen from the secretary, and the revolver used in the commission of the crime, were introduced in evidence at the trial. The wallet and the revolver had been found by the police during a search of Hardy's apartment on the night of his arrest.

Bill 552 was nol prossed and Hardy was found guilty on bills 550, 558 and 559.

In 1967 Hardy filed a petition for post-conviction relief under the Pennsylvania Post-Conviction Hearing Act, 19 P.S. § 1180–1 et seq. (PCHA). Judge Edward J. Bradley conducted a hearing on that petition on May 8, 1967. Full opportunity was afforded to Hardy to present evidence relating to the issues raised. He offered only his own testimony.[2] Because the trial record indicated that the guilty pleas on bills 554–557, 560 and 563 had been entered without the aid of counsel, Judge Bradley vacated those convictions and sentences at the end of the hearing, and at a later date, he granted Hardy leave to file post-trial motions *nunc pro tunc* on bills 558 and 559.

The post-trial motions were filed and were argued before the Honorable Paul Chalfin who filed an opinion in which he concluded that Hardy had pled not guilty to *all counts* in bill 558 and guilty to all counts in bill 559 except the fifth. Judge Chalfin set aside the guilty pleas on bill 559. After considering the substantive issues raised by the motions, Judge Chalfin sustained the convictions on bill 558 and on the fifth count of 559. The Superior Court of Pennsylvania affirmed per curiam, Commonwealth v. Hardy, 216 Pa.Super. 832, 266 A.2d 530 (1970), and allocatur was denied by the Supreme Court of Pennsylvania on July 20, 1970. The instant petition followed.

Since Hardy was given a full and fair hearing in the state court on all issues raised by this petition, no evidentiary hearing was required or held in this court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). After reviewing the state court records, I conclude that relator's contentions are without merit and the petition for writ of habeas corpus will, therefore, be denied.

---

2. His principal allegation was that Sgt. McDermott had engaged counsel for him in order to clean the slate and that Hardy had agreed to go along with this "program". The attorney, Garfield Levy, had died before the filing of the PCHA petition.

### 1. *Lack of Formal Adjudication of Guilt.*

At no point in the trial transcript is there a formal pronouncement of guilt by Judge Allessandroni on bills 558 and 559. Hardy argues from this omission that there had been no adjudication of guilt and that he is, therefore, entitled to be released.

In his opinion denying Hardy's post-trial motions, Judge Chalfin stated that "[t]he lack of a formal pronouncement [of guilt] is not fatal where the record clearly shows that the defendant's guilt was in fact determined." Considering the overwhelming evidence of guilt and the fact that notations indicating a finding of "Guilty" appeared on the face of the pertinent bills of indictment, Judge Chalfin concluded that there had been an adjudication of guilt.

▮ Interpretation of the language of a state judgment is a matter for the state courts since they "are best able to determine the meaning of their own judgments" and their interpretation is not subject to collateral attack by a writ of habeas corpus. United States ex rel. Speaks v. Brierley, 417 F.2d 597, 601 (3d Cir. 1969). I am bound, therefore, by the state court's determination that there had been an adjudication of guilt.

### 2. *Admissibility of Evidence Seized and of Hardy's Confession*

The following facts relating to Hardy's arrest and the search of his apartment were established at the 1952 trial through the testimony of Sergeant McDermott:

During January and February, 1952, a rash of robberies of real estate offices occurred in Philadelphia. From the victims of these robberies, the police obtained a description of the man (or men) involved. One real estate office was robbed twice and on each occasion the holdup man was observed disappearing at the same corner (Carlisle and Diamond Streets). The police surmised that the robber had gone into one of three buildings in the immediate vicinity, and began checking the names of the residents of those buildings. After another robbery, the police uncovered part of a letter which, after investigation, they concluded must have been dropped by one of the robbers. The letter, on which there was no name or account number, indicated that the person to whom it had been sent was delinquent in the amount of $12.69 in making payments on a loan to the General Loan Company. The police went to the offices of the General Loan Company and after search of the company's records discovered that John Hardy had an overdue debt of $12.69, and that he resided in the 1400 block of Diamond Street in one of the buildings previously investigated.

The police conducted a surveillance of Hardy's apartment the next day, but apparently uncovered no further evidence. At 5:00 p. m. on that day, three plainclothesmen knocked on Hardy's door. They at first stated they were from the real estate office, but after they were admitted they identified themselves as police officers and conducted themselves in a manner indicating that Hardy was under arrest. Over Hardy's objections, they searched the apartment. After uncovering the instrumentalities and fruits of the crimes, the police officers confronted Hardy with the evidence. He then made oral admissions and later signed a written statement, which was dated the day following the arrest.

In the 1967 PCHA proceedings Hardy testified that the police did not identify themselves; that they arrested him immediately upon entering the apartment and took him to the police station where they held him incommunicado, and threatened and beat him until he confessed five days later; and that the police then backdated his written statement to the day following the arrest. He testified further that he was not present in the apartment when it was searched.

The revolver used in the Wallace Street robbery and the wallet stolen from the secretary, both of which were seized during the search of Hardy's

apartment, were introduced in evidence at the trial, as were Hardy's oral and written statements.

### (a) The Search and Seizure.

■ A warrantless search is valid only if incidental to a valid arrest. See United States ex rel. Walls v. Mancusi, 406 F.2d 505 (2d Cir.), cert. denied, 395 U.S. 958, 89 S.Ct. 2099, 23 L.Ed.2d 745 (1969); United States ex rel. Foose v. Rundle, 389 F.2d 54 (3d Cir.), cert. denied, 392 U.S. 914, 88 S.Ct. 2075, 20 L. Ed.2d 1372 (1968). Hardy concedes that he was under arrest when the police entered his apartment, but he claims that the arrest was "unlawful" as without probable cause. Further, he asserts that even if the arrest was lawful, under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a search incidental to an arrest must be limited to the person arrested and the area within his immediate control, and that the search of his apartment exceeded this limitation.

■ This issue was raised before Judge Chalfin, who concluded that the error, if any, in allowing this evidence at relator's trial was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967). In arriving at the conclusion that there was overwhelming evidence of guilt, however, Judge Chalfin considered the statements made by Hardy to the police following his arrest and the testimony he gave at the trial. If Hardy made those statements to the police only because he was confronted with illegally seized evidence, the admissions and the written confession would be tainted by that illegality. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We must consider, therefore, whether the search was valid and this, in turn, will depend in large measure upon whether there was probable cause for the arrest.

Probable cause to arrest a person without a warrant exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ In the instant case the police knew from their own investigations that a series of robberies were being committed by the same man, alone or with others, and that after two of these robberies the man disappeared at the corner of Diamond and Carlisle Streets. They surmised that the perpetrator of these robberies would have had to enter one of three buildings, and hence, they began an investigation of the residents of those buildings. After another robbery the police discovered at the scene a letter sent from the General Loan Company to an unknown addressee that indicated that the addressee owed the Company an overdue balance of $12.69. A check of the company's files indicated that a John Hardy owed $12.69 and was in arrears and that he lived in one of the three buildings in the vicinity of Diamond and Carlisle Streets into which the police believed that the robber had disappeared. While admittedly close, I believe this combination of facts within the knowledge of the police gave them probable cause to arrest relator without a warrant. The arrest was, therefore, lawful.[3]

Under the law prior to *Chimel,* a warrantless search incidental to an arrest

---

3. Although the question of the legality of the arrest was raised in Hardy's state petition, it appears that it was not pressed. An examination of counsel's state court brief reveals that he concentrated on attacking the search on *Chimel* grounds, and he seems to have assumed the validity of the arrest. This may explain why the issue was not dealt with by Judge Chalfin in his opinion. In my view the matter of probable cause is not free from doubt and for that reason I have discussed it.

could be extended to the premises within the possession and control of the person arrested. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The search of relator's apartment fell within those limits, but beyond the limits of *Chimel*. The Court of Appeals for this Circuit has held that *"Chimel does not apply in cases where the evidence complained of was gained from a search prior to the date of the decision in Chimel.[4]"* United States v. Schartner, 426 F.2d 470, 474 (3d Cir. 1970). See generally Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969).

 The arrest was lawful and the search incident thereto was proper and the items discovered in the course thereof were properly admissible at relator's trial.

(b) Admissibility of Confession.

 Hardy has alleged further that his written and oral statements were coerced. There was no objection to the introduction of these statements at trial. An examination of the record convinces me that the failure to object was a part of the trial strategy of the defense and validly waived Hardy's right to collaterally attack the use of those statements.

 Pennsylvania follows the contemporaneous objection rule. Commonwealth v. Snyder, 427 Pa. 83, 233 A.2d 530 (1967), cert. denied, 390 U.S. 983, 88 S.Ct. 1104, 19 L.Ed.2d 1281 (1968). If Hardy's failure to object was a deliberate bypass of available state procedures, it waives his right to raise the question on a petition for writ of habeas corpus. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408

(1965); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Whether an accused has thus waived his federal rights is, of course, a question of federal law and an effective waiver of constitutional rights requires an "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

The record in this case indicates that Hardy and his counsel were seeking to obtain leniency from the court by emphasizing Hardy's cooperation with the police. The defense to the substantive charges was directed almost exclusively to the sexual charge. All of Hardy's statements throughout sought to exculpate him on that charge and his testimony at trial was consistent therewith. I believe that Hardy wanted the statements in evidence, both to impress the court with his forthrightness and to convince the court of his innocence on the sexual charge in an effort to obtain leniency in sentencing. This tactical decision is binding on Hardy and he cannot now complain because it failed to accomplish the desired end.

3. *Waiver of Trial by Jury.*

 Hardy claims that he did not waive the right to trial by jury. State law requires a written waiver. 19 P.S. § 786. There is no written waiver in Hardy's record, but lack of a written waiver is not conclusive under Pennsylvania law. See Commonwealth ex rel. Moore v. Tees, 179 Pa.Super. 634, 118 A.2d 224 (1955), cert. denied, 351 U.S. 913, 76 S.Ct. 705, 100 L.Ed. 1447 (1956). Judge Chalfin concluded, from a review of the state record, that Hardy had val-

4. The Commonwealth has strenuously argued here that the exclusionary rule of evidence first applied to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) is not retroactive to a 1952 trial. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court held that the Mapp decision had application only to cases not yet final on the date of the court's decision in Mapp. The Supreme

Court of Pennsylvania has held that where an accused did not file an immediate appeal from his conviction, but is later permitted to appeal *nunc pro tunc*, his case is not final until state appellate remedies have ben exhausted, permitting an accused to raise objections under Mapp even though his trial had occurred before Mapp was decided. Commonwealth v. Storch, 432 Pa. 121, 247 A.2d 562 (1968).

idly waived the right to trial by jury under state law. That record also reveals waiver by federal standards. During the arraignment on the various bills of indictment, Hardy expressed his intention to waive a jury trial on bills 550 and 552, and counsel indicated the same intention in the afternoon regarding bills 558 and 559.[5] Further there is a notation on the bills of indictment that jury trial had been waived. These are sufficient to support the conclusion that there had been a valid waiver of trial by jury especially since no allegation of lack of waiver was made for a period of fifteen years.

### 4. Lack of Effective Assistance of Counsel

Relator argues that his counsel was ineffective. This argument is based on matters discussed elsewhere in the opinion and requires no extensive repetition here. The standard to be applied to determine whether or not one has been fairly represented at trial is whether counsel has exercised "the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970).

█ The charge in the instant case is based upon (1) failure to object to use of illegally seized evidence, (2) failure to object to use of the confession, and (3) waiver of jury trial. As to (1), counsel was not required to anticipate Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which was not decided until nine years after this trial; as for (2), it has been noted above that this was a tactical decision and was not an unreasonable one under the circumstances; and finally, as for (3),

the decision to waive a trial by jury and to permit the matter to be tried by a judge is purely a tactical one and, without more, affords no basis for a charge that counsel was incompetent. See generally Barham v. Cox, 312 F.Supp. 583 (E.D.Va.1970); United States ex rel. Robinson v. Rundle, 320 F.Supp. 883 (E. D.Pa.1970).

### 5. Insufficiency of Evidence.

Hardy contends that the evidence is insufficient to support the verdicts of guilty, particularly the charge relating to taking property from the secretary.

█ The only constitutional question raised by this argument is one of due process. There is no violation of due process if there is any evidence to support the conviction. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). I have carefully reviewed the state record and have concluded that there is more than sufficient evidence as to each of the convictions to satisfy the requirements of due process. United States ex rel. Flowers v. Rundle, 314 F.Supp. 793 (E.D.Pa.1970).

### 6. Lack of Fair Trial.

Hardy's final contention is that the totality of the circumstances surrounding his 1952 trial add up to the denial of a fair trial. I have examined the state record carefully with this charge in mind and, while it leaves much to be desired from today's more enlightened standards, the trial on the only remaining charges was a fair one from the standpoint of satisfying requirements of due process of law.

The petition for writ of habeas corpus will be denied.

---

5. The transcript, in pertinent part, reads as follows, pp. 10–11:

"Mr. Levy: As to Bill No. 558, the 5th Count is beating, striking and illusing. I think it may be put very frankly that we will leave it to Your Honor for adjudication.

\*　　\*　　\*　　\*　　\*

Mr. Dunn: Robert Ruffin has pleaded the same way. He has pleaded guilty

to all of the counts except the 5th count and he has waived as to that.

The Court: You have the same situation in Bill No. 559. They have pleaded guilty to every count except the 5th count.

Mr. Filippone: [District Attorney] Yes sir.

The Court: Then they will waive as to the count.

Mr. Filippone: That's right."